[Cite as *Bakies v. RSM Maintenance, Inc.*, 2019-Ohio-3323.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

JOSEPH BAKIES,

    PLAINTIFF-APPELLANT,         CASE NO. 1-19-03

    v.

RSM MAINTENANCE, INC., ET AL.,       O P I N I O N

    DEFENDANTS-APPELLEES.

---

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CV2017 0635**

**Judgment Affirmed**

**Date of Decision:   August 19, 2019**

---

**APPEARANCES:**

    *Mark S. Pantello* **for Appellant**

    *Mark S. Maddox* **for Appellees, RSM Maintenance, Inc. & Meijer**
                **Stores Limited Partnership**

    *Matthew J. Timperman* **for Appellee, RBK Enterprises, LLC**

**PRESTON, J.**

{¶1} Plaintiff-appellant, Joseph Bakies ("Bakies"), appeals the December 21, 2018 judgment of the Allen County Court of Common Pleas granting the motions for summary judgment of defendants-appellees, RSM Maintenance, Inc. ("RSM"), Meijer Stores Limited Partnership ("Meijer"), and RBK Enterprises, LLC ("RBK"). For the reasons that follow, we affirm.

{¶2} Meijer operates a retail location at 3298 Elida Road in Lima, Ohio. Meijer contracted with RSM for snow removal and salting services at the Lima location. (*See* Doc. No. 48, Plaintiff's Ex. 8). RSM acted as a middle management company between Meijer and RBK, and it subcontracted with RBK, a snow removal company, to perform snow removal and salting services at Meijer's Lima location. (Doc. No. 41, Knowlton's Oct. 23, 2018 Depo. at 8). (*See* Doc. No. 48, Plaintiff's Ex. 9). Brian Knowlton ("Knowlton") is the owner of RBK and often performed or assisted with the snow removal and salting services at Meijer's Lima location. (Doc. No. 41, Knowlton's Oct. 23, 2018 Depo. at 8).

{¶3} On the morning of December 17, 2016, Bakies and his fiancée, Kristen Shoemaker ("Shoemaker"), went for breakfast at the IHOP restaurant in Lima, Ohio. (Doc. No. 38, Bakies's Aug. 13, 2018 Depo. at 16-17). Bakies described the weather that morning as cold, "wet," and raining intermittently. (*Id.* at 16-17). Bakies described the roads during his drive to IHOP as "wet" but "okay." (*Id.* at

17). Following breakfast, Bakies and Shoemaker drove across the street to Meijer's Lima location for some Christmas shopping. (*Id.* at 18). Bakies dropped off Shoemaker at the front entrance of the store, and she entered the store without incident. (*Id.* at 18-20). Bakies then drove to one of the parking spaces. (*Id.* at 18-20). While driving to the parking spot, Bakies noted that the Meijer parking lot was "wet" but he did not notice any ice. (*Id.* at 18-19). After parking, Bakies opened the door to step out and "as soon as [he] hit the pavement, [he] went down" and was unable to get up. (*Id.* at 20-25). Bakies speculated he slipped on "black ice" but did not see any ice on the ground, only that the pavement looked "wet." (*Id.* at 22-23). Two Meijer employees assisted Bakies in getting up from the ground and into his vehicle, and Shoemaker drove him to the hospital for medical care for injuries to his right shoulder. (*Id.* at 25-27).

**{¶4}** On November 13, 2017, Bakies filed a complaint against RSM, RBK, and Meijer Group, Inc. asserting claims of negligence. (Doc. No. 1). On January 2, 2018, RSM and Meijer Group, Inc. filed their answer to Bakies's complaint and a contingent cross-claim against RBK. (Doc. No. 9). On January 8, 2018, by agreement of the parties, Bakies filed an amended complaint substituting Meijer for Meijer Group, Inc. (Doc. No. 10). On January 18, 2018, RSM and Meijer filed

their amended answer and contingent cross-claim.[1]  (Doc. No. 11).  On January 25, 2018, RBK filed its answer to the amended complaint.  (Doc. No. 14).

**{¶5}** On November 1, 2018, RSM and Meijer filed a motion for summary judgment.  (Doc. No. 39).  In their motion for summary judgment, RSM and Meijer argued that they did not owe a legal duty to Bakies with respect to the wet or icy conditions of the parking lot.  (*Id.*).  RSM argued that as a "middle management company," it does not own or occupy the premises and, therefore, did not owe a duty to Meijer's customers under a premises liability theory.  (*Id.*).  Moreover, RSM argued that it was not actively involved in salting and removing snow from Meijer's parking lot and was not contractually obligated to salt the Meijer parking lot.  (*Id.*).  Meijer argued that it did not have a duty to remove a natural accumulation of ice or rain from the parking lot.  (*Id.*).  Meijer also contended that it did not have superior knowledge regarding the conditions of the parking lot and that no abnormal conditions existed in the area in which Bakies fell.  (*Id.*).

**{¶6}** RBK also filed a motion for summary judgment on November 1, 2018.  (Doc. No. 42).  In its motion for summary judgment, RBK contended that the slippery pavement Bakies fell on was open and obvious and the result of a natural accumulation of ice.  (*Id.*).  Therefore, RBK asserted that it did not have a duty to

---

[1] Because summary judgment was granted in favor of all of the defendants, RSM and Meijer's cross-claim is not relevant to this appeal and will not be discussed.

warn Bakies of the danger associated with the condition of the Meijer parking lot. (*Id.*).

{¶7} On December 11, 2018, Bakies filed his response to the defendants' motions for summary judgment. (Doc. No. 48). RBK filed its reply brief in support of its motion for summary judgment on December 14, 2018. (Doc. No. 52). On December 21, 2018, Meijer and RSM filed their reply brief in support of their motion for summary judgment. (Doc. No. 54). That same day, the trial court granted the motions for summary judgment. (Doc. No. 53).

{¶8} On January 22, 2019, Bakies filed his notice of appeal. (Doc. No. 56). Bakies raises three assignments of error for our review, which we will address together. For ease of discussion, we will also address Bakies's assignments of error out of order. We will first address Bakies's first assignment of error, followed by his third and second assignments of error, respectively.

### Assignment of Error No. I

**The trial court erred when it determined that Defendants-Appellees did not assume a contractual duty.**

### Assignment of Error No. II

**The trial court erred when it determined that Defendants-Appellees are afforded the same limitation of duty that owners and occupiers are afforded as it relates to unnatural accumulations of ice and snow.**

**Assignment of Error No. III**

**The trial court erred when it determined that Defendants-Appellees did not have superior knowledge of the danger created by Defendants-Appellees.**

{¶9} In his first assignment of error, Bakies argues that the trial court erred by granting Meijer's and RSM's motions for summary judgment because he is an intended beneficiary of the Master Services Agreement ("Agreement") between RSM and Meijer. Bakies argues that as an intended beneficiary of the Agreement, Meijer and RSM owed him a duty to maintain the parking lot in accordance with the terms of the contract. Bakies further alleges that Meijer and RSM breached this duty by failing to adhere to the industry's highest standards and practices. We disagree.

{¶10} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the

conclusion is adverse to the non-moving party.  Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

**{¶11}** "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).  "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292. "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

**{¶12}** Material facts are those facts "'that might affect the outcome of the suit under the governing law.'" *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). "Whether a genuine issue exists is answered by the following inquiry:  [d]oes the evidence present 'a sufficient disagreement to require submission to a jury' or is it 'so one-sided that one party must prevail as a matter of law[?]'" *Id.*, quoting *Anderson* at 251-252.

**{¶13}** "To establish a cause of action for negligence, a plaintiff must show the existence of a duty, breach of that duty, and an injury proximately caused by the

breach." *Daley v. Fryer*, 3d Dist. Allen No. 1-14-48, 2015-Ohio-930, ¶ 16, citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680 (1998). To defeat a defendant's properly supported motion for summary judgment in a negligence action, the plaintiff must first establish that the defendant owed him a duty. *Id.*, citing *Kaeppner v. Leading Mgt., Inc.*, 10th Dist. Franklin No. 05AP-1324, 2006-Ohio-3588, ¶ 9. "The plaintiff must then present evidence from which reasonable minds could conclude that the defendant breached that duty and that the breach was the proximate cause of the plaintiff's injuries." *Id.*

{¶14} Bakies asserts that Meijer and RSM contractually assumed a duty to him, as a Meijer customer, to maintain the salted areas of the Meijer parking lot in accordance with the highest industry standards. He contends that because Meijer and RSM failed to maintain the salted areas of the parking lot in accordance with these standards, they thus breached their duty to him. We disagree.

{¶15} Here, when viewing the evidence in a light most favorable to Bakies, we find that no genuine issue of material fact exists regarding whether Meijer and RSM failed to maintain the parking lot in accordance with their contract and with the highest industry standards. First, we note that Bakies did not allege breach of contract in his complaint. Thus, he is not entitled to relief under a claim for breach of contract. Accordingly, we will limit our discussion to whether Bakies was owed a duty in tort as a third-party contract beneficiary.

**{¶16}** To support his contention that he is an intended contract beneficiary, Bakies points to the language of the Agreement between Meijer and RSM. The Agreement contains the following provision:

Contractors must provide all Services in a good, timely, professional, and workmanlike manner in accordance with best industry standards and practices and specifications contained in the [Statement of Work]. * * * These warranties will be in addition to all other warranties, express, implied or statutory: will survive Meijer's payment, acceptance, inspection or failure to inspect: and will run to Meijer and its customers.

(Doc. No. 48, Plaintiff's Ex. 7).

**{¶17}** Bakies argues that because the language of the contract specifies that the contract warranties "will run to Meijer and its customers," he, as a Meijer customer, is an intended beneficiary of the contract. (Appellant's Brief at 9). Bakies further contends that as an intended beneficiary of the contract, he was entitled to benefit from ice and snow removal services in accordance with the "industry's highest standards and practices." (*Id.* at 9-10). He argues that Meijer and RSM failed to provide said services in accordance with the industry's highest standards and practices, resulting in his injury. (*Id.* at 9-12). Bakies also points to additional language in the contract, arguing that the contract provisions create additional

contractual obligations to Meijer's customers beyond the duty to maintain the parking lot in accordance with the "industry's highest standards and practices." (*Id.* at 10-12). In response, Meijer and RSM allege that Bakies is, at best, an incidental beneficiary of the contract and is therefore barred from recovering under the contract. (Appellees Meijer and RSM's Brief at 7-8); (Appellee RBK's Brief at 7-9). Meijer and RSM also contend that the record does not contain evidence of the industry standards and, thus, Bakies failed to establish that they breached their duty to him. (Appellees Meijer and RSM's Brief at 9-10).

{¶18} However, even assuming (without deciding) that Bakies is an intended beneficiary of the contract, Bakies failed to provide expert testimony to establish the industry's "highest standards and practices" or the proper standard of care for snow and ice removal in a commercial parking lot. *See Bittinger v. Klotzman*, 113 Ohio App.3d 847, 852 (8th Dist.1996) ("[I]n order to establish negligence with respect to snow removal in a commercial parking area, expert testimony is required."); *Edvon v. Lyons*, 8th Dist. Cuyahoga No. 83712, 2004-Ohio-5597, ¶ 20 ("[T]o prove that the plowing methods were inadequate, [Plaintiff] needed to present expert testimony, which she failed to do."); *Mitchell v. Parkridge Apartments, Ltd.*, 8th Dist. Cuyahoga No. 81046, 2002-Ohio-5357, ¶ 14; *Rampersaud v. Madison Development Co.*, 9th Dist. Lorain No. 97CA006768, 1998 WL 332956, *2 (June 24, 1998) ("Even assuming that [the witness] was an 'expert,'

and that he failed to perform as required under the contract between his company and the other defendants, plaintiffs needed an expert to testify that the plowing had been negligent."). Therefore, without expert testimony, Bakies is unable to establish what duty was owed to him. Thus, because Bakies failed to present any evidence concerning the scope of the duty owed to him by Meijer and RSM, he necessarily failed to demonstrate that a genuine issue of material fact existed about whether the parties breached any such duty.

{¶19} In light of the foregoing, we conclude that the trial court did not err by holding that Bakies failed to establish that a genuine issue of material fact existed with respect to whether Meijer and RSM breached a duty to Bakies arising from the Agreement.

{¶20} Accordingly, Bakies's first assignment of error is overruled.

{¶21} In his third assignment of error, Bakies argues that the trial court erred in granting summary judgment to Meijer because although an owner or occupier of a premises typically owes no duty to a business invitee to warn or remove dangers associated with the natural accumulation of ice and snow, three exceptions to this general rule apply to the present case and create a genuine issue of material fact regarding whether Meijer breached a duty to Bakies. We disagree.

{¶22} "A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to

warn its invitees of latent or hidden dangers." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 5, citing *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 204 (1985) and *Jackson v. Kings Island*, 58 Ohio St.2d 357, 360 (1979). "However, this duty does not require landowners to insure the safety of invitees on their property." *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, ¶ 11. "[T]he open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong* at ¶ 5. "The 'open and obvious' doctrine states that an owner or occupier of property owes no duty to warn invitees entering the property of open and obvious dangers on the property." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992).

{¶23} "[A]n owner or occupier of land ordinarily owes no duty to business invitees to remove natural accumulations of ice and snow from the premises, or to warn invitees of the dangers associated with such natural accumulations of ice and snow." *Miller v. Tractor Supply Co.*, 6th Dist. Huron No. H-11-0001, 2011-Ohio-5906, ¶ 8, citing *Brinkman v. Ross*, 68 Ohio St.3d 82, 83-84 (1993); *Jeswald v. Hutt*, 15 Ohio St.2d 224 (1968), paragraph one of the syllabus; *Abercrombie v. Byrne-Hill Co., Ltd.*, 6th Dist. Lucas No. L-05-1010, 2005-Ohio-5249, ¶ 12. "The underlying rationale * * * is that everyone is assumed to appreciate the risks associated with natural accumulations of ice and snow and, therefore, everyone is responsible to protect himself or herself against the inherent risks presented by natural

accumulations of ice and snow." *Brinkman* at 84. Thus, the rationale for the so-called "no-duty winter rule" is more expansive than the rationale for the open and obvious doctrine. *Miller* at ¶ 9. "The no-duty winter rule assumes everyone will appreciate and protect themselves against risks associated with natural accumulations of ice and snow; the open and obvious doctrine assumes only those who could observe and appreciate the danger will protect themselves against it." *Sherlock v. Shelly Co.*, 10th Dist. Franklin No. 06AP-1303, 2007-Ohio-4522, ¶ 22.

**{¶24}** Here, it is undisputed that Bakies was a business invitee and Meijer was the owner or occupier of the land. We note that Bakies refers to the "Appellees" when making this argument and does not specify Meijer as the applicable party. However, as Meijer is the only party to the litigation that owns or occupies the premises on which Bakies fell, the argument does not apply to RSM and RBK. Thus, under the no-duty winter rule, Meijer did not have a duty to remove natural accumulations of snow and ice from the parking lot or to warn Bakies of the dangers associated with natural accumulations of snow and ice. However, Bakies argues that three exceptions to the no-duty winter rule apply to the facts of this case.

**{¶25}** First, Bakies argues that an exception to the no-duty rule applies because Meijer was actively negligent in permitting or creating an unnatural accumulation of ice or snow. Ohio courts have held that the no-duty winter rule is inapplicable where the owner or occupier of the premises is actively negligent by

creating or permitting an unnatural accumulation of ice and snow. *See Lehman v. Cracker Barrel Old Country*, 5th Dist. Richland No. 2004-CV-0048, 2005-Ohio-370, ¶ 22; *Kaeppner*, 2006-Ohio-3588, at ¶ 11. Here, we must first determine the threshold issue of whether there is a genuine issue of material fact whether the ice Bakies may have slipped on was a natural or unnatural accumulation.

{¶26} "'[A] natural accumulation of ice and snow is one which accumulates as a result of an act of nature, whereas an unnatural accumulation is one that results from an act of a person.'" *Daley*, 2015-Ohio-930, at ¶ 19, quoting *Coletta v. Univ. of Akron*, 49 Ohio App.3d 35, 37 (10th Dist.1988). "'"Unnatural" accumulation must refer to causes and factors other than the inclement weather conditions of low temperatures, strong winds and drifting snow, i.e., to causes other than the meteorological forces of nature. By definition, then, the "unnatural" is the man-made, the man-caused * * *.'" *Id.*, quoting *Porter v. Miller*, 13 Ohio App.3d 93, 95 (6th Dist.1983).

{¶27} Here, construing the evidence in Bakies's favor, the evidence suggests that he slipped on black ice. Courts have found that black ice is a natural accumulation of ice and is not substantially more dangerous than is normally associated with freezing rain. *See Miller*, 2011-Ohio-5906, at ¶ 14 ("Black ice * * * is not a condition substantially more dangerous than is normally associated with freezing rain. The formation of black ice on pavement * * * is an ordinary and

expected consequence of winter precipitation * * *."); *Duncan v. Hallrich, Inc.*, 11th Dist. Geauga No. 2006-G-2703, 2007-Ohio-3021, ¶ 22; *Burton v. CFA Med. Bldg. & Garage*, 8th Dist. Cuyahoga No. 74335, 1999 WL 401403, *2 (June 17, 1999); *Flint v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga Nos. 80177 and 80478, 2002-Ohio-2747, ¶ 20 (stating that ice created from run-off from a melting snow pile does not constitute an unnatural accumulation of black ice).

**{¶28}** Here, when viewing the evidence in a light most favorable to Bakies and assuming that there was black ice, we find that no genuine issue of material fact exists regarding whether the ice on the Meijer pavement was the result of a natural accumulation. Bakies has failed to present any evidence that the black ice on which he slipped and fell was created by any means other than meteorological forces. Bakies described the weather on December 17, 2016 as cold and rainy. (Doc. No. 38, Bakies's Aug. 13, 2018 Depo. at 15-16). Bakies testified that he did not observe ice on the pavement where he fell, only wet pavement. (*Id.* at 22-23). However, he opined that there may have been black ice on the pavement. (*Id.* at 30, 52). Additionally, Bakies testified that there was nothing abnormal about the pavement on which he fell, such as a pothole. (*Id.* at 66-67). Thus, we find that Bakies has failed to present evidence that a genuine issue of material fact exists with respect to whether the accumulation where he fell was a result of a natural or unnatural accumulation. Accordingly, we find that the trial court did not err in determining

that if there was black ice on the pavement where Bakies fell, it was the result of a natural accumulation. Because the black ice on which Bakies fell was the result of a natural accumulation, Bakies's argument that the no-duty rule does not apply because Meijer was actively negligent by creating or permitting an unnatural accumulation of snow or ice fails.

{¶29} Second, Bakies argues that the no-duty winter rule does not apply because Meijer expressly assumed a duty by contract to keep its parking lot in a reasonably safe condition and in accordance with the highest industry standards and practices.

{¶30} Courts have recognized that although owners and occupiers of land ordinarily owe no duty to business invitees to warn business invitees of the dangers associated with natural accumulations of ice and snow or to remove natural accumulations of ice and snow from their premises, the duty to remove natural accumulations of snow and ice can be created by express contract. *Chatelain v. Portage View Condominiums*, 151 Ohio App.3d 98, 2002-Ohio-6764, ¶ 8 (9th Dist.).

{¶31} Bakies argues that the Agreement between Meijer and RSM created a duty for Meijer to maintain its parking lot in accordance with the highest industry standards and practices and maintain the premises in an ice-free condition.

**{¶32}** However, as discussed in response to Bakies's contention that he is an intended beneficiary of the contract, Bakies has failed to provide expert testimony with regard to snow and ice removal practices on a commercial lot and to establish what constitutes "the highest industry standards and practices" and reasonable duties. As discussed above, expert testimony is required to establish the standard of care in snow removal practices for a commercial parking area. *See Bittinger*, 113 Ohio App.3d at 852; *Edvon*, 2004-Ohio-5597, at ¶ 20; *Mitchell*, 2002-Ohio-5357, at ¶ 14; *Rampersaud*, 1998 WL 332956, at *2. Therefore, absent expert testimony establishing "the highest industry standards and practices" for proper snow and ice removal techniques, Bakies is unable to establish what duty Meijer owed to him and whether that duty was breached. Thus, even if Meijer did assume some kind of contractual obligation to Bakies, he has failed to provide any evidence to demonstrate what duty was created and whether that duty was breached. Accordingly, we conclude that the trial court did not err by not applying the express contract exception to the no-duty winter rule to the present case.

**{¶33}** Third, Bakies argues that the no-duty winter rule does not apply because Meijer had "superior knowledge" that the natural accumulation of snow and ice on the premises created a condition substantially more dangerous than Bakies should have anticipated by knowledge of conditions prevailing in the area.

**{¶34}** "[I]f an occupier is shown to have had notice, actual or implied, that a natural accumulation of snow and ice on his or her premises has created a condition substantially more dangerous than a business invitee should have anticipated by reason of the knowledge of conditions prevailing generally in the area, negligence may be proven." *Lehman*, 2005-Ohio-370, at ¶ 21, citing *Debie v. Cochran Pharmacy-Berwick, Inc.*, 11 Ohio St.2d 38, 41 (1967) and *Gober v. Thomas & King, Inc.*, 2d Dist. Montgomery No. 16248, 1997 WL 451430, *3 (June 27, 1997). "To become liable, the owner must have some 'superior knowledge' of the existing danger or peril." *Id.*

**{¶35}** Courts have limited this exception only to cases where "a natural accumulation of ice or snow conceals another danger." *Miller*, 2011-Ohio-5906, at ¶ 13. "'[T]he cases referencing an "improper accumulation" are instances where a natural accumulation of snow fall hid or covered a hazardous condition about which the property owner knew or should have known.'" *Id.*, quoting *Crossman v. Smith Clinic*, 3d Dist. Marion No. 9-10-10, 2010-Ohio-3552, ¶ 15. *See also Logenberger v. Collins Food*, 52 Ohio App.2d 105, 108 (9th Dist.1977) (finding an improper accumulation where snow concealed an abrupt change in the slope of the underlying concrete); *Miller v. Biskind Dev. Corp.*, 8th Dist. Cuyahoga No. 53470, 1988 WL 18818, *5 (Feb. 18, 1988) (finding that a genuine issue of material fact of whether the appellant was confronted with a condition substantially more dangerous than

normally associated with snowfall existed where an accumulation obscured a difference in height between the parking lot pavement and a concrete barrier).

{¶36} Bakies argues that the condition of the Meijer parking lot was substantially more dangerous than a business invitee should have anticipated by reason of knowledge of the conditions prevailing generally in the area. Bakies argues that multiple people slipped on the ice while coming to his aid, although only Bakies fell. Bakies opines that the reason for multiple people slipping is because (1) other areas outside the store were salted and, therefore, people were not exercising necessary caution, and (2) the pavement looked wet and not icy.

{¶37} Moreover, Bakies argues that Meijer was aware of the "dangerous condition of the parking lot." As evidence that Meijer had "superior knowledge" of the existing conditions, Bakies states that Meijer has corrals for cart returns that are in line with the parking spaces. Bakies opines that because employees regularly return the carts from the corral and bring them back into the store, "[i]t is inconceivable that one or more of the Meijer employees [returning carts] would not have experience[d] the slippery nature of that area." (Appellant's Brief at 17). Bakies further argues that Meijer was "well aware" that there were a large number of vehicles in the parking lot the two times the parking lot had been salted in the fifteen hours prior to Bakies's fall, thus ensuring that the salt would not have had adequate coverage in the places where the vehicles were parked. (*Id*.)

{¶38} Bakies's argument is not persuasive. First, the record contains no evidence that the black ice concealed another danger. In fact, Bakies admitted that the pavement in the area where he fell was "normal" and did not contain any unusual features, such as a pothole. (Doc. No. 38, Bakies's Aug. 13, 2018 Depo. at 66-67). Furthermore, Bakies testified that nothing concealed his view of the pavement as he stepped out of his vehicle. (*Id.* at 21). Therefore, there is not a genuine issue of fact regarding whether the ice on the pavement concealed another danger.

{¶39} Moreover, the record is devoid of any indication that Meijer had any kind of "superior knowledge" of the condition of the parking lot. Although Bakies argues that Meijer employees would have experienced the slippery nature of the area in which Bakies fell when returning carts from the cart corral, the record contains no mention of any such employees and any knowledge that such employees had of the condition of the parking lot. In fact, in his deposition testimony, Bakies expressly denied seeing any employees retrieving shopping carts. (*Id.* at 21). Moreover, Brenda Gerdeman ("Gerdeman"), a Meijer employee, testified in deposition that she first encountered the slippery conditions when she reached the area of the parking spots as she came to assist Bakies after his fall. (*See* Doc. No. 44, Gerdeman's Oct. 23, 2018 Depo. at 5-6). Furthermore, Gerdeman's testimony that Meijer employees slipped while coming to Bakies's aid undermines Bakies's contention that Meijer had some superior knowledge of the condition of the parking

lot. Finally, in deposition testimony, Bakies himself admitted that he did not have any reason to believe that a Meijer employee knew more about the condition of the area of the parking lot where he fell than he did. (Doc. No. 38, Bakies's Aug. 13, 2018 Depo. at 29-30). Therefore, there is not an issue of material fact regarding whether Meijer had "superior knowledge" of the condition of the parking lot. Because Bakies has failed to produce evidence demonstrating that the ice he fell on concealed another danger and that Meijer had "superior knowledge" of the condition of the parking lot, we cannot conclude that a genuine issue of material fact existed regarding whether the area of the Meijer parking lot was substantially more dangerous than Bakies should have anticipated based upon his knowledge of the conditions prevailing. Thus, the trial court did not err by determining that Meijer did not have superior knowledge of the condition of the parking lot.

{¶40} Because we have found that the exceptions to the no-duty winter rule do not apply to the present case, we apply the no-duty winter rule. Applying the no-duty winter rule, we find that Meijer did not have a duty to (1) remove the natural accumulations of snow and ice in their parking lot or (2) warn Bakies of the dangers associated with the natural accumulations of snow and ice. From the record before this court, reasonable minds can come to but one conclusion and that conclusion is adverse to Bakies. In light of the foregoing, we conclude that the trial court did not err by holding that the natural accumulation rule applies to bar Bakies's negligence

claims against Meijer and thus it did not err by granting Meijer's motion for summary judgment.

**{¶41}** Accordingly, Bakies's third assignment of error is overruled.

**{¶42}** In his second assignment of error, Bakies argues the trial court erred in granting summary judgment in favor of RSM and RBK because they breached their duty of care as independent contractors. Bakies argues that RSM and RBK are liable for his injury because they created an unnatural accumulation of ice that increased Bakies's risk of injury. We disagree.

**{¶43}** "'An independent contractor who creates a dangerous condition on real property is not relieved of liability under the doctrine which exonerates an owner or occupier of land from the duty to warn those entering the property concerning open and obvious dangers on the property.'" *Cosimi v. Koski Constr. Co.*, 11th Dist. Ashtabula No. 2008-A-0075, 2009-Ohio-5892, ¶ 45 quoting *Simmers*, 64 Ohio St.3d at 645. "An independent contractor owes a general duty of care towards a business invitee; that is, he must exercise that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances." *Nageotte v. Cafaro Co.*, 160 Ohio App.3d 702, 2005-Ohio-2098, ¶ 35 (6th Dist.). "In the context of snow and ice removal, the defendant breaches his duty of care if his actions create an *unnatural* accumulation that substantially increases the risk of injury normally associated with winter accumulations of ice

and snow." (Emphasis sic.) *Jackson v. J-F Ents., Inc.*, 6th Dist. Lucas No. L-10-1285, 2011-Ohio-1543, ¶ 14, citing *Zamano v. Hammerschmidt, Inc.*, 6th Dist. Huron No. H-02-031, 2003-Ohio-1618, ¶ 21 and *Dunbar v. Denny's Restaurant*, 8th Dist. Cuyahoga No. 86385, 2006-Ohio-1248, ¶ 13.

**{¶44}** We found in the discussion above that there was no genuine issue of material fact that the ice located in the area of the Meijer parking lot where Bakies fell was the result of natural accumulation. As there is no genuine issue of fact whether RBK and RSM created an unnatural accumulation, we cannot find that RSM and RBK breached a duty of care to Bakies. Therefore, we find that the trial court did not err in granting summary judgment in favor of RSM and RBK.

**{¶45}** Accordingly, Bakies's second assignment of error is overruled.

**{¶46}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and SHAW, J., concur.**

**/jlr**