[Cite as *Horan v. Sugar Valley Meats, L.L.C.*, 2025-Ohio-4947.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JASON B. HORAN, et al., | Case No. 2025 AP 03 0007 |
| Plaintiffs - Appellants | Opinion & Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas of Tuscarawas County, Case No. 2023 CT 11 0807 |
| SUGAR VALLEY MEATS, LLC, | |
| Defendant - Appellee | Judgment: Affirmed |
| | Date of Judgment: October 29, 2025 |

BEFORE: William B. Hoffman; Craig R. Baldwin; David M. Gormley, Judges

APPEARANCES: Geoffrey C. Brown (argued), for Plaintiff-Appellant; Kyle A. Cramer (argued) and Stephen J. Chuparkoff, for Defendant-Appellee.

*Gormley, J.*

**{¶1}** Appellants Jason and Gina Horan appeal the trial court's decision granting summary judgment in favor of defendant Sugar Valley Meats, LLC ("SVM") in this action arising from Jason Horan's slip and fall in SVM's barn. The trial court found, among other things, that the no-duty winter rule bars the Horans' negligence and loss-of-consortium claims against SVM. Because we agree with the trial court's analysis, we now affirm.

**The Key Facts**

**{¶2}** Dr. Jason Horan ("Horan") is both a dentist and an experienced cattle farmer in eastern Ohio who, with his wife, Gina Horan, owns farmland containing four barns utilized for, among other purposes, the housing of farm animals. Since 2009, Horan has raised beef cattle and other livestock, so he is familiar both with barns and with winter conditions in Ohio.

{¶3} On December 26, 2022, Horan arrived at SVM's livestock barn in Sugarcreek to deliver several of his cattle for butchering services there. No precipitation was falling that day, but the weather was extremely cold, as evidenced by the fact that Horan's animal trailer and his own barn gates and latches were frozen that morning.

{¶4} SVM's barn houses livestock awaiting butchering. The barn is enclosed on three sides with one side open to the elements. SVM's owner, Reuben Erb, testified at a deposition that snow has entered the barn "very few times," but ice has sometimes formed on the barn floor. Erb checks the barn on butchering mornings and applies ice melt if needed. On December 26, however, no employees were present when Horan arrived. Erb had given his staff the day off, and December 26 was not a butchering day. The barn had last been cleaned four days earlier on December 22.

{¶5} Horan did not observe snow or ice in SVM's parking lot when he arrived at the barn. Horan walked through the barn five or six times while unloading his cattle and completing paperwork. He never recalled seeing ice in the barn, either on that day or during any of his previous visits. The barn, according to Horan at his deposition, was somewhat shadowed but adequately lit. After hanging a cattle-identification tag on a stall in the barn, Horan turned to leave. At that moment, he slipped and fell, sustaining multiple pelvic and hip fractures.

{¶6} Horan testified, during his deposition, that he slipped on ice that day, stating "as soon as you slip on ice you know it's ice." He distinguished that sensation from stepping in animal waste: "ice feels different than slimy poop with Muck boots." Horan never saw or felt any ice in the barn before or after his fall. Horan acknowledged that one can reasonably expect to find snow and ice in barns that are open to the elements during

Ohio winters, and he testified that he has experienced similar conditions in his own barns. Horan is sure that he slipped on ice, and he rules out any other cause for his fall.

{¶7} The Horans filed suit alleging negligence, and they also included a claim for loss of consortium for Gina Horan. SVM moved for summary judgment, arguing that the no-duty winter rule precluded any liability for SVM tied to natural accumulations of ice and snow in SVM's barn. SVM argued, too, that the Horans could not establish proximate cause. The trial court granted summary judgment in favor of SVM, finding that Horan's belief that he slipped on ice was speculative, that any ice would have been a natural accumulation, that no exception to the no-duty winter rule applied, and that the potential dangers of winter weather in Ohio were obvious to Horan. The Horans now appeal.

## Standard of Review

{¶8} We review a summary-judgment decision with fresh eyes, applying the same standard as the trial court. *Smathers v. Glass*, 2022-Ohio-4595, ¶ 30. Summary judgment is appropriate when no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach only one conclusion when viewing the evidence most strongly in favor of the nonmoving party. *Id.* at ¶ 31.

{¶9} To establish negligence, a plaintiff must prove: (1) the existence of a duty; (2) breach of that duty; and (3) injury resulting proximately from that breach. *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77 (1984).

## The Trial Court Did Not Err in Granting Summary Judgment

{¶10} The Horans raise four assignments of error challenging the trial court's summary-judgment decision. Because these assignments are interrelated and all

concern whether SVM owed a duty to Horan under the circumstances presented, we consider them together.

{¶11} And we need not resolve whether genuine factual disputes exist on the question of whether Horan's fall was the result of ice forming in the barn. That is so, we conclude, because even if Horan were able to prove at a trial that he did indeed, as he claims, slip on ice, Ohio's no-duty winter rule would defeat his negligence claim as a matter of law.

## The No-Duty Winter Rule

{¶12} Under well-established law in Ohio, an owner or occupier of land owes to business invitees no duty to remove natural accumulations of ice and snow from the owner's premises and no duty to warn invitees of associated dangers. *Brinkman v. Ross*, 68 Ohio St.3d 82, 83 (1993). That rule rests on the assumption that everyone is aware of the risks of natural ice and snow accumulations during Ohio winters, and everyone is expected to protect themselves against those inherent dangers. *Id.* at 84.

{¶13} A natural accumulation of ice or snow is a condition caused by natural meteorological forces, such as low temperatures, strong winds, drifting snow, and freeze-thaw cycles. *Evans v. Jeff Wyler Chrysler Jeep Dodge Ram of Springfield*, 2018-Ohio-1726, ¶ 44 (2d Dist.). An unnatural accumulation, on the other hand, is a buildup of ice or snow resulting from human intervention, with that human action leading to a situation where the ice or snow has formed or accumulated in unexpected places or ways. *Porter v. Miller*, 13 Ohio App.3d 93, 95 (6th Dist. 1983).

{¶14} Ohio courts have repeatedly explained that ice formation from ordinary winter weather and its consequences should be viewed as a natural accumulation. *See*

*Madaras v. Applebee's Neighborhood Grill & Bar*, 2025-Ohio-169, ¶ 23 (8th Dist.) (ice at a restaurant entrance underneath a flat awning that was dripping water was a natural accumulation); *Johnson v. CBRE, Inc.*, 2023-Ohio-3518, ¶ 29 (9th Dist.) (characterizing as a natural accumulation the formation of ice from the runoff of water flowing from a man-made helipad onto a lower parking lot); *Bakies v. RSM Maintenance, Inc.*, 2019-Ohio-3323, ¶ 27 (3d Dist.) (black ice in a parking lot on a cold and rainy day was a natural accumulation).

{¶15} Here, ice inside a barn open to winter weather should not, in our view, be seen as an unnatural accumulation. The record shows that any ice inside SVM's barn on December 26, 2022, resulted from a natural meteorological condition — extremely cold temperatures — not from affirmative action by SVM. Horan presented no evidence that SVM created or aggravated any ice accumulation. He does not claim that SVM put ice in the barn on purpose, either, and he does not know how any ice came to be there.

{¶16} The Horans suggest that the ice might have been frozen animal urine, but animals housed in barns urinate as part of normal agricultural operations, and when that moisture freezes due to cold temperatures, the resulting ice remains a natural accumulation. Nothing in the record suggests that any ice resulted from anything other than cold temperatures.

{¶17} The Horans argue that ice inside a barn is an unnatural accumulation because the barn is man-made. That argument, though, would eliminate the no-duty winter rule, as, under the Horans' logic, ice on any driveway, sidewalk, parking lot, or anything else man-made would always be rendered "unnatural" merely because humans constructed the surface. The fact that the barn was a man-made structure cannot be a

sufficient reason for ice inside it to be considered unnatural.  We conclude, therefore, that the no-duty winter rule applies to the alleged accumulation of ice in SVM's barn.

**Exceptions to The No-Duty Winter Rule**

{¶18}  Two exceptions to the no-duty winter rule exist, and Horan argues for the application of both.  First, the rule does not apply when the owner or occupier has been "actively negligent" in creating or permitting an unnatural accumulation of ice and snow.  *Bakies*, 2019-Ohio-3323 at ¶ 25 (3d Dist.).  Second, liability may attach if the owner had "superior knowledge" that a natural accumulation of ice or snow had created a condition substantially more dangerous than the invitee should have anticipated based on that invitee's lesser knowledge of conditions prevailing in the area.  *Id*. at ¶ 33; *Miller v. Tractor Supply Co.*, 2011-Ohio-5906, ¶ 11 (6th Dist.).  Neither exception applies here.

{¶19}  **Active Negligence.** The Horans argue that SVM was actively negligent by failing to inspect the barn on December 26 and by not cleaning it for four days.  That argument, though, misconstrues the active-negligence exception, which requires affirmative action to create or permit an unnatural accumulation and is an active step beyond simply failing to remove a natural accumulation.  *Lehman v. Cracker Barrel Old Country*, 2005-Ohio-370, ¶ 22 (5th Dist.).  The very foundation of the no-duty winter rule is that property owners have no obligation to remove natural accumulations or warn about them.  *Brinkman*, 68 Ohio St.3d at 85 (expressing the Supreme Court's "unwilling[ness] to extend homeowner liability to cover slip-and-fall occurrences caused entirely by natural accumulations of ice and snow" even where the owner was aware of the hazard and was expecting guests).

**{¶20}** The fact that SVM sometimes checks for ice and applies ice melt does not mean that it was actively negligent. SVM took no active role in creating ice in its weather-exposed barn, and instead that ice formed naturally from meteorological conditions. And because the ice was a natural accumulation, SVM's decision not to treat it does not constitute permitting an unnatural one. At worst, SVM chose not to extend a nonobligatory courtesy on that particular day, which Horan knew, because he testified about his understanding that SVM was not open for butchering on December 26 and that SVM only cleans its barn on butchering days. SVM was not actively negligent.

**{¶21} Superior Knowledge.** The superior-knowledge exception applies when an owner "is shown to have had notice, actual or implied, that a natural accumulation of snow and ice on his or her premises has created a condition substantially more dangerous than a business invitee should have anticipated by reason of the knowledge of conditions prevailing generally in the area." *Lehman* at ¶ 21. Courts narrowly construe this exception, generally limiting it to situations where ice or snow conceals another danger. *Miller*, 2011-Ohio-5906, at ¶ 13 (6th Dist.); s*ee Mikula v. Tailors*, 24 Ohio St.2d 48, 57 (1970) (superior-knowledge exception applied where snow concealed a deep hole in a parking lot).

**{¶22}** Here, no evidence suggests that ice concealed another danger. Horan testified that the barn floor was normal with no unusual features. The alleged hazard was ice's potential slipperiness, which is a danger everyone in Ohio, particularly experienced farmers, should anticipate when walking through a barn open to the elements on a frigid December day. Further, Horan testified that he has dealt with snow and ice in his own barns and that those conditions are expected hazards during Ohio winters.

{¶23} To be sure, the fact that SVM knew that ice *could* form in the barn is an acknowledgment of obvious winter realities. That acknowledgement, however, is not evidence of any superior knowledge on the part of SVM of a substantially more dangerous condition than Horan himself should have anticipated. Horan, with years of Ohio winter experience and an extensive farming background, was fully capable of anticipating ice in a barn open to the elements on a bitterly cold December day.

{¶24} The Horans have not demonstrated that either exception to the no-duty winter rule applies. Any ice on which Horan slipped was naturally accumulated from meteorological forces in a barn open to the elements. SVM did not create or aggravate that accumulation through active negligence. And SVM did not have superior knowledge of any condition substantially more dangerous than the one that Horan — an experienced farmer familiar with barn conditions in Ohio winters — should have anticipated.

{¶25} When viewing the evidence most strongly in favor of the Horans, no genuine issue of material fact exists as to whether SVM owed a duty to Horan. Reasonable minds can come to but one conclusion: the no-duty winter rule bars recovery. Thus, the trial court did not err by granting summary judgment.

## The Consortium Claim Cannot Stand on Its Own

{¶26} A loss-of-consortium claim is derivative and cannot stand on its own if the underlying primary claim fails. *Inskeep v. Columbus Zoological Park Assn.*, 2023-Ohio-288, ¶ 36 (5th Dist.); *Francis v. Loviscek*, 2018-Ohio-4279, ¶ 60 (11th Dist.). Because we conclude that the trial court properly granted summary judgment on Horan's negligence claim, his wife's consortium claim fails too.

**{¶27}** For the reasons explained above, the judgment of the Court of Common Pleas of Tuscarawas County is affirmed.  Costs are to be paid by Appellants Jason Horan and Gina Horan.

By: Gormley, J.;

Hoffman, J. and

Baldwin, P.J. concur.