[Cite as *Tucker v. Dennis Baughman Co., Ltd.*, 2014-Ohio-2040.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

DONNA TUCKER, et al.

     Appellants/Cross-Appellees

v.

DENNIS BAUGHMAN CO., LTD., et al.

     Appellees/Cross-Appellants

C.A. Nos.     26620
                  26635

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2011-03-1561

DECISION AND JOURNAL ENTRY

Dated: May 14, 2014

---

BELFANCE, Presiding Judge.

{¶1}   Plaintiffs-Appellants Donna and Kevin Tucker (collectively "the Tuckers") appeal the decision of the Summit County Court of Common Pleas granting summary judgment on their claims to Defendants.  Defendant-Appellant Dennis Baughman Co., Ltd. ("Baughman") also appeals.  For the reasons set forth below, we reverse in part and vacate in part the judgments of the trial court.  Additionally, we dismiss Baughman's attempted appeal.

I.

{¶2}   Defendant-Appellee Lynn Gorman hired Baughman to build her house on Stonecliff Drive in Akron.  As part of the construction, Ms. Gorman requested that a safe room be installed in the sub-basement of the house.  This secret sub-basement was accessible only by elevator or via a set of stairs that, under normal circumstances, were hidden/covered by the stairs leading into the basement.  So that the sub-basement could be accessed without the elevator, the stairs leading to the basement were hinged at the point of the third step from the top such that the

bottom portion of the basement stairs could be manually rolled aside placing them at a 90 degree angle from the top stairs, and, thereby revealing the stairs to the sub-basement. When in an open position, a person at the landing preceding the steps leading to the basement would be able to descend two steps and then arrive at a drop off. Thus, opening the moveable stairs essentially resulted in a cliff with a drop-off of approximately eight to ten feet to the sub-basement floor below. Prior to installing the moveable stairway, at certain points during construction, the area was protected by temporary guards. At the time of the accident, the moveable stairs had been in place for approximately 30 days and when open there was no gate or guard rail at the location of the edge of the drop-off. However, there were plans at the time of the accident to install one, it just had not been done at the time of accident. To gain access to the sub-basement, one would descend the stairs leading to the basement and enter a code in a keypad located at the bottom of the stairs. Entering the code would unlock the hinge in the basement stairs allowing the person to move the basement stairs aside, thus revealing the sub-basement stairs. A person entering the sub-basement could manually close the stairwell while descending into the sub-basement.

{¶3} While the house was under construction, Ms. Tucker was hired by Baughman to clean the house. After much of the construction was done, Ms. Gorman hired Ms. Tucker to continue cleaning the residence. Ms. Gorman cleaned the residence with her son, Lucas Tucker. Sometimes Lucas' neighbor, Scott Spencer, also assisted them.[1]

{¶4} On the morning of January 30, 2010, Ms. Tucker, Lucas, and Mr. Spencer arrived at Ms. Gorman's house to clean it. At that point in time, while the house did not yet have a certificate of occupancy, it was finished enough that Ms. Gorman and her daughter, Jessica, were

---

[1] Mr. Spencer maintained that he never cleaned the residence; however, both Ms. Tucker and Lucas asserted that he was paid to clean on multiple occasions.

sometimes spending some nights at the house and had some furniture in place. In addition, Ms. Gorman had ongoing deliveries of new furniture to the residence. Jessica and one of the painters were also in the house the morning of January 30, 2010. Ms. Gorman had been at the home but left to go work out. Prior to leaving Ms. Gorman observed two painters in the garage. She also observed that the stairs were in a closed position. Likewise, Lucas, who was cleaning the right wing of the house, had not seen the steps open. According to Ms. Tucker, the stairs were always in a closed position when she cleaned on prior occasions. Ms. Tucker, Lucas, and Mr. Spencer spread out around the large house to begin cleaning it. Around lunch time, Ms. Tucker was cleaning a window ledge located parallel to, and above, the basement stairs. As Ms. Tucker was sidestepping along the basement stairs to the clean the ledge, she fell to the sub-basement below, sustaining several injuries in the process. After she fell, Ms. Tucker became aware that she had fallen because the moveable stairs had been opened.

{¶5} In March 2011, the Tuckers filed a complaint against Baughman asserting negligence in the construction and design of the staircase. The complaint was twice amended with the second amended complaint adding Ms. Gorman as a defendant and alleging negligence by both Defendants and loss of consortium. Both Ms. Gorman and Baughman moved for summary judgment asserting that the application of the open-and-obvious doctrine prevented Ms. Tucker's recovery. On August 9, 2012, the trial court agreed and granted summary judgment to the Defendants. Baughman filed a reply brief in support of its motion for summary judgment on August 13, 2012. On August 20, 2012, Ms. Tucker filed a motion for reconsideration and motion to strike the new issues raised in Baughman's reply brief. On August 27, 2012, the trial court granted Ms. Tucker's motion and scheduled a hearing for August 29, 2012. On September 10, 2012, the Tuckers filed a notice of appeal to this Court. Later that same day, the trial court

issued an entry vacating the August 27, 2012 order, denying Ms. Tucker's motion for reconsideration and granting her motion to strike. Baughman subsequently appealed the August 27, 2012, and September 10, 2012 orders. The appeals were thereafter consolidated. The Tuckers have raised three assignments of error, and Baughman has raised two assignments of error for our review.

II.

{¶6}    Before reaching the merits of these appeals, we pause to consider the trial court's actions subsequent to granting summary judgment to the Defendants. "This Court has jurisdiction to hear appeals only from final orders and judgments. If a trial court lacks jurisdiction, any order it enters is a nullity and is void. While this Court lacks jurisdiction to consider nullities, we have inherent authority to recognize and vacate them." (Internal quotations and citations omitted.) *Hairline Clinic, Inc. v. Riggs-Fejes,* 9th Dist. Summit No. 25171, 2011-Ohio-5894, ¶ 7.

{¶7}    The trial court's August 9, 2012 judgment was a final, appealable order as it disposed of the entire action. Subsequent to that judgment, Ms. Tucker filed a motion seeking reconsideration along with a motion to strike a portion of Baughman's reply brief. This Court has stated that, "because a motion to reconsider was not prescribed by the Ohio Rules of Civil Procedure, such a motion is a nullity. Accordingly, 'all judgments or final orders from [a] motion [to reconsider] are a nullity.'" (Internal citation omitted.) *Allstate Ins. Co. v. Witta*, 9th Dist. Summit No. 25738, 2011-Ohio-6068, ¶ 8, quoting *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 381 (1981). Thus, the portion of Ms. Tucker's motion seeking reconsideration and any ruling by the trial court on it were nullities and are hereby vacated by this Court.

{¶8} Additionally, the portion of trial court's September 10, 2012 entry that vacates its order granting reconsideration is a nullity. We note that the trial court *did not* attempt to vacate its August 27, 2012 entry granting reconsideration because it realized that the order was void. *See Witta,* 2011-Ohio-6068, at ¶ 8. Instead, the trial court attempted to vacate the entry granting reconsideration so it could deny the motion to reconsider on the merits. As the motion for reconsideration was a nullity, the trial court's September 10, 2012 order vacating the grant of reconsideration and thereafter denying the motion was also a nullity. *See id*. Moreover, we note that "[a]n appeal is perfected upon the filing of a written notice of appeal. R.C. 2505.04. Once a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal." *In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, ¶ 9. Thus, even if the motion for reconsideration had not been a nullity, the trial court would not have the authority to reconsider the entry of summary judgment once the notice of appeal was filed. *See id.* To the extent the trial court's September 10, 2012 entry granted the motion to strike, we note that the trial court already granted the motion to strike on August 27, 2012. Accordingly, the trial court's actions on September 10, 2012, with respect to the motion to strike appear to be superfluous as there is nothing in the September 10, 2012 entry vacating the grant of the motion to strike and then reinstating it.

{¶9} We conclude that, because Ms. Tucker's August 20, 2012 motion for reconsideration was a nullity, the trial court's September 10, 2012 order vacating the grant of reconsideration and thereafter denying the motion was also a nullity. The portion of the trial court's September 10, 2012 entry which addresses the motion for reconsideration is vacated as void.

III.

BAUGHMAN'S FIRST ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW BY EXCEEDING ITS JURISDICTION WHEN IT GRANTED PLAINTIFFS' MOTIONS FOR RECONSIDERATION AND TO STRIKE AFTER HAVING PREVIOUSLY ENTERED A FINAL SUMMARY JUDGMENT DISPOSING OF ALL CLAIMS IN THE CASE.

BAUGHMAN'S SECOND ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW BY EXCEEDING ITS JURISDICTION WHEN IT SUA SPONTE ENTERED AN ORDER VACATING THE ENTRY RECONSIDERING AND REVERSING A FINAL SUMMARY JUDGMENT WHICH HAD DISPOSED OF ALL CLAIMS IN THE CASE AND GRANTING PLAINTIFFS' MOTION TO STRIKE AFTER PLAINTIFFS HAD FILED A NOTICE OF APPEAL FROM THE SUMMARY JUDGMENT.

{¶10}     In Baughman's two assignments of error, it challenges the trial court's actions following its grant of summary judgment to both Defendants. We note that the only entries Baughman has appealed from are the August 27, 2012, and September 10, 2012 orders. To the extent this Court has declared those entries nullities and vacated them, we dismiss Baughman's appeal as this Court has no jurisdiction to review the merits of nullities. *See Hairline Clinic, Inc.* at ¶ 7. To the extent those entries are not void, i.e., to the extent Baughman challenges the trial court's ruling on the motion to strike, we dismiss Baughman's appeal because there is nothing which would indicate that the trial court's ruling granting the motion to strike affected Baughman's substantial rights. *See* R.C. 2505.02(B)(1). As the reply brief at issue was filed after the trial court granted summary judgment on August 9, 2012, there is nothing before us to suggest Baughman's substantial rights were impacted when the trial court subsequently struck the reply brief.    Baughman's attempted appeal is dismissed.

THE TUCKERS' SECOND ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING HOMEOWNER LYNN GORMAN'S MOTION FOR SUMMARY JUDGMENT.

{¶11}  The Tuckers assert in their second assignment of error that the trial court erred in granting summary judgment to Ms. Gorman based upon the open-and-obvious doctrine.  We agree.

{¶12}  In reviewing a trial court's ruling on a motion for summary judgment, "[w]e apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party."  *Garner v. Robart*, 9th Dist. Summit No. 25427, 2011-Ohio-1519, ¶ 8.  Pursuant to Civ.R. 56(C), summary judgment is appropriate when:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).  To succeed on a summary judgment motion, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).  If the movant satisfies this burden, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial.'"  *Id*. at 293, quoting Civ.R. 56(E).

{¶13}  "'To prevail in a negligence action, the plaintiff must show (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting from the breach.'" *Hackett v. TJ Maxx,* 9th Dist. Summit No. 24978, 2010-Ohio-5824, ¶ 12, quoting *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, ¶ 21.  It is well-established that an owner or occupier of land

owes a duty to business invitees to exercise ordinary care in maintaining the premises in a reasonably safe condition, to warn of latent or hidden dangers, and to refrain from injuring invitees by negligent activities conducted on the premises. *Perry v. Eastgreen Realty Co.*, 53 Ohio St.2d 51, 52 (1978); *Jackson v. Kings Island*, 58 Ohio St.2d 357, 359 (1979) ("The owner or occupier of premises is not an insurer of the safety of his invitees, but he does owe a duty to exercise ordinary or reasonable care for their protection.").

{¶14} However, "a premises-owner owes no duty to persons entering those premises regarding dangers that are open and obvious." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 5. "The rationale underlying this doctrine is 'that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.'" *Id.*, quoting *Simmers v. Bentley Constr. Co.,* 64 Ohio St.3d 642, 644 (1992). "When applicable, * * * the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong* at ¶ 5.

{¶15} "[T]his Court analyzes the totality of the circumstances to determine if the danger is open and obvious" as a matter of law. *Neura v. Goodwill,* 9th Dist. Medina No. 11CA0052-M, 2012-Ohio-2351, ¶ 10. Thus, "the issue before us is whether, considering the totality of the circumstances, a genuine issue of material fact exists regarding whether a reasonable person would have discovered the [hazard,] i.e. whether that hazard was open and obvious." *Marock v. Barberton Liedertafel,* 9th Dist. Summit No. 23111, 2006-Ohio-5423, ¶ 14. "Not surprisingly, whether a particular danger is open and obvious depends heavily on the particular facts of the case." *Hissong v. Miller*, 2d Dist. Miami No. 2009-CA-37, 2010-Ohio-961, ¶ 10.

**{¶16}** The Tuckers maintain that the danger was not open and obvious because of the surrounding circumstances, which they assert include the unusual nature of the condition, namely the moveable staircase itself, the fact that it was in a closed position upon inspection of the home, and the fact that Ms. Tucker's attention was focused upon cleaning the nearby window ledge during which her back was to the hazard.

**{¶17}** Ms. Tucker began cleaning the house at issue in October 2009. Initially, she was hired by Baughman but later began cleaning at the request of Ms. Gorman. Ms. Tucker testified that she was aware that the staircase was movable and that she had seen it open on one occasion. However, she had never opened the staircase herself and did not know the code. The single time that Ms. Tucker cleaned the sub-basement, she had used the elevator to access it. As noted above, at the time of the accident, there were no safety features installed on the staircase to prevent anyone from falling if the staircase was opened or to warn them of the danger. There was testimony that the staircase was to be kept closed and, if it was in fact opened, it was to be quickly shut. It was anticipated that people would use the elevator to access the sub-basement.

**{¶18}** Prior to cleaning the house, Ms. Tucker indicated that she generally walked around the house to decide what to focus on and split up the work, although she did not walk to the basement. On January 30, 2010, Ms. Tucker stated that, after they split up to begin cleaning, the painter, Tim, called up from the basement and told her that there was carpeting in the sub-basement and so she might want to clean that. Ms. Tucker did not have plans to clean the sub-basement, as there were a lot of other things to do, but she nonetheless informed Lucas and Mr. Spencer that the carpeting was in the sub-basement. Ms. Tucker testified that generally Lucas or Mr. Spencer would clean the basement and sub-basement.

{¶19}  That day, Ms. Tucker was cleaning the main floor.  Shortly before the accident, she knew that they were soon going to break for lunch and wanted a good stopping point.  She "realized that there was a ledge where the windows were that [she] could go over and clean and so [she] was  * * * cleaning that and kind of back or sidestepping a little bit and going backward to clean it * * * and then [she] fell."  The window ledge is parallel to the movable staircase. While cleaning the ledge, Ms. Tucker's back was to the open space created by virtue of the steps being in an open position.  Ms. Tucker agreed that there was nothing obstructing her view of the staircase but her back was to the opening in the staircase.  She indicated that she had never cleaned that ledge before.  Ms. Tucker testified that she was "focused on what [she] was doing and * * * there was no reason that [she] expected those steps to be open at 1:00."  While Ms. Tucker indicated that the lighting was not good and there was a glare from the window, she also averred that the lighting was not poor and was not the cause of her fall.  Ms. Tucker maintained that she did not see the stairs were open because she "was stepping down backwards and sideways and [] was focusing on what [she] was doing and [] had no reason to believe that * * * somebody had opened that staircase."  However, Ms. Tucker did testify that, if she had been walking forward instead of backward she would have seen the opening in the staircase.  She also agreed that she knew that if she was descending the stairs into the basement she had to be careful in case the stairs were opened.  Ms. Tucker testified that she did not feel the need to warn Lucas and Mr. Spencer to be careful of the stairs because "[t]hey could see for themselves."  Ms. Tucker indicated that if she had looked she would have seen the opening.  However, she disagreed that she should have been looking, stating, "Not when you're working and you're focused on what you're doing and you have a specific task which causes you to have to be in a different position, be in a position that would enable you to clean and focus on what you're

doing." Ms. Tucker was found initially by Mr. Spencer who had been in the sub-basement. Mr. Spencer could not remember how he got into the sub-basement, whether it was via the stairs or the elevator.

{¶20} Ms. Gorman testified that she was not home during the accident as she had left to go to the gym for either a 9:00 a.m. or 10:00 a.m. class and then stopped at a neighbor's house. She also stated that the stairs were closed when she left. Ms. Gorman testified that she knew that the elevator to the sub-basement was working that day because she had used it when the paramedics arrived to the home. She acknowledged that generally the elevator was to be used to access the sub-basement, not the moveable stairs.

{¶21} We agree that the staircase in this matter is unusual and inherently dangerous, particularly given the absence of safety features in place at the time of the accident. Essentially, when the staircase is opened to reveal the sub-basement, the top basement stairs end in a sheer cliff with an 8 to 10 foot drop. Ms. Tucker was aware that the staircase was moveable and had seen it in the open position. However, in the approximately 22 times she had cleaned the residence it had never been in the open position. The testimony is undisputed that, at the time Ms. Gorman left the residence that morning, the staircase was closed. Thus, as Ms. Tucker testified, she had no reason to expect the staircase to be open at the time she decided to clean the ledge parallel to the staircase. There was also testimony that, as a rule, the stairs were to be closed at all times and, when opened, they were to be closed immediately.

{¶22} Ms. Tucker was hired to clean the Gorman's house and was actively engaged in completing that task when this accident occurred. We are mindful that we are required to consider the totality of the circumstances and view all of the evidence in a light most favorable to Ms. Tucker when deciding whether there is a genuine issue of material fact concerning whether a

reasonable person would have discovered the hazard. *See Marock*, 2006-Ohio-5423, at ¶ 14. As Ms. Tucker had never before cleaned the ledge at issue and was under the arguably reasonable expectation that the staircase would be closed, we conclude reasonable minds could differ on whether a reasonable person would have discovered the hazard.

{¶23} While Ms. Tucker admitted in her deposition that, in hindsight, if she had looked she would have seen the opening, she also indicated that she did not see it due to the nature of the work she was doing, which involved side/back-stepping along the staircase. Further, viewing the evidence in a light most favorable to Ms. Tucker, and given the entirety of the circumstances, we conclude reasonable minds could differ with respect to whether a reasonable person would have examined the staircase's position prior to cleaning when the staircase had never been open during cleaning before, the staircase was supposed to remain in a closed position, the staircase was initially in a closed position as stated by Ms. Gorman, and given that one does not generally expect to find a cliff at the end of a staircase. The fact pattern in this case is like no other this Court has encountered or like any in any case this Court discovered in its research. Staircases are common experiences in people's everyday lives; while people generally approach them with a degree of caution, no one approaches a staircase with an expectation that it will abruptly end in a cliff. Thus, at the very least, under the circumstances of this case, we believe a genuine issue of material fact exists with respect to whether the hazard was open and obvious. Therefore, we sustain the Tuckers' second assignment of error.

THE TUCKERS' FIRST ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING CONTRACTOR DENNIS BAUGHMAN LTD.'S MOTION FOR SUMMARY JUDGMENT.

{¶24} The Tuckers assert in their first assignment of error that the trial court erred in granting summary judgment to Baughman. We agree.

{¶25} Baughman asserted in the trial court that it was entitled to summary judgment because the open-and-obvious doctrine applied to relieve it of premises liability. The Tuckers maintained that the open-and-obvious doctrine did not apply to negate Baughman's liability because Baughman was not an owner or occupier of the premises.

{¶26} "Historically, a landowner's liability in tort is incident to the occupation or control of the land, which involves the owner's right and power to admit and exclude people from the premises." *Simmers,* 64 Ohio St.3d at 645. "The 'open and obvious' doctrine, therefore, governs a landowner's duty to persons entering the property—property over which the landowner has the right and power to admit or exclude persons as invitees, licensees, or trespassers." *Id*. Thus, "an independent contractor who creates a dangerous condition on real property is not relieved of liability under the doctrine which exonerates an owner or occupier of land from the duty to warn those entering the property concerning open and obvious dangers on the property." *Id.* Instead, when the defendant has "no property interest in the premises, we must look to the law of negligence to determine [the] duty of care * * *." *Id.* "Under the law of negligence, a defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position." *Id.* "Injury is foreseeable if a defendant knew or should have known that its act was likely to result in harm to someone." *Id.*

{¶27} Based upon the record before us and the arguments made by Baughman, we conclude that Baughman failed to meet its burden on summary judgment to establish that it was an occupier entitled to the benefit of the open-and-obvious doctrine. As Baughman's motion

solely sought summary judgment based on the application of this doctrine, it was not entitled to summary judgment.

{¶28} The parties do not dispute that the language from the syllabus of *Simmers* remains the law in Ohio. Nor does *Baughman* argue on appeal that it did not create the dangerous condition at issue. *See Szarka v. Mt. Sinai Med. Ctr.*, 8th Dist. No. 72058, 1997 WL 781733, *3 (Dec. 18, 1997) (When there is no evidence that the independent contractor created the hazardous condition, the open-and-obvious doctrine applies.). Instead, Baughman only asserts that the open-and-obvious doctrine applies to relieve it of liability because it was an occupier of the premises. Baughman does not assert that it had any ownership interest in the property. In addition, Baughman seems to maintain that both it and Ms. Gorman were owners/occupiers of the premises. We note that Baughman has pointed to no factual evidence from the record that would support its theory. *See* App.R. 16(A)(7). Assuming that Baughman could be deemed an occupier under the circumstances, Baughman has not pointed to evidence indicating that it had the authority on January 30, 2010, to admit and exclude people from the residence. *See Simmers* at 645.

{¶29} The record reflects that Ms. Gorman hired Baughman to build the house and staircase at issue and that Baughman was responsible for many decisions regarding the staircase. It is also clear that, at the time of the accident, Ms. Tucker was cleaning the house pursuant to a request from Ms. Gorman. In her deposition, Ms. Gorman testified that she had Christmas 2009 at the house at issue and that she had started to move furniture into it at the time of the accident. Additionally, Ms. Gorman testified that by the time of the accident she and Jessica had "stayed several nights at the new house." While at the time of the accident, a certificate of occupancy had not yet been issued, Ms. Gorman indicated that, nonetheless, "we were living there but not

every night." She also stated that if Dennis Baughman, the founder of Baughman, had told her it was not alright to live there prior to January 30, 2010, she would not have let Jessica start moving in. Lucas likewise stated that "[i]t was definitely a livable house[.]" Further, Mr. Baughman testified in his deposition that the house was not "even an active jobsite on [January 30, 2010,]" and that he "had no idea that there was anyone at that house that day[.]"

{¶30} Viewing that evidence in a light most favorable to the Tuckers, one could infer that the house was far enough towards completion that, even assuming at some point in time Baughman was an occupier, it was not an occupier at the time of the accident. Baughman points to no testimony evidencing that it had the authority to exclude anyone from the premises, particularly anyone that the landowner, Ms. Gorman, had admitted. Moreover, it does not appear that any testimony in the record would support such a claim. The Supreme Court of Ohio has "not [been] persuaded to extend the 'open and obvious' doctrine to persons who conduct activity with the consent of the landowner but who themselves have no property interest in the premises." *Simmers*, 64 Ohio St.3d at 645; *see also Torchik v. Boyce,* 121 Ohio St.3d 440, 2009-Ohio-1248, ¶ 11. Accordingly, we can only conclude based upon Baughman's limited arguments below and on appeal that Baughman was not entitled to summary judgment based upon the open-and-obvious doctrine as Baughman has not pointed to evidence that it was an occupier of the premises. As that is the only ground upon which Baughman moved for summary judgment, we sustain the Tuckers' first assignment of error and remand the matter to the trial court.

THE TUCKERS' THIRD ASSIGNMENT OF ERROR

IN RESPONDING TO TUCKERS' MOTION FOR RECONSIDERATION, THE TRIAL COURT COMMITTED FURTHER PREJUDICIAL ERROR WHEN IT OFFERED AN ALTERNATIVE REASON FOR GRANTING SUMMARY JUDGMENT TO THE CONTRACTOR DENNIS BAUGHMAN, LTD. (THAT THE INJURY TO DONNA TUCKER WAS UNFORESEEABLE AS A MATTER OF LAW), AN ISSUE THAT HAD CONSCIOUSLY BEEN ABANDONED BY THE CONTRACTOR WHEN IT SUBMITTED ITS MOTION FOR SUMMARY JUDGMENT WITHOUT SUPPORTING AFFIDAVITS THAT WOULD HAVE BEEN REQUIRED TO ADDRESS COMMON LAW NEGLIGENCE ISSUES.

{¶31} The Tuckers assert in their third assignment of error that the trial court erred in providing alternative reasoning for granting Baughman summary judgment in its September 10, 2012 entry.  However, as this Court has already vacated that portion of the entry addressing the Tuckers' motion for reconsideration, this assignment of error has been rendered moot and we decline to address it.  *See* App.R. 12(A)(1)(c).

IV.

{¶32} In light of the foregoing, we sustain the Tuckers' first and second assignments of error.  The Tuckers' third assignment of error is moot.  In addition, Baughman's appeal is dismissed and portions of the trial court's August 27, 2012, and September 10, 2012 entries are vacated as discussed above.

> Appeal dismissed in part,
> judgment reversed in part,
> vacated in part,
> and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
EVE V. BELFANCE
FOR THE COURT


HENSAL, J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶33} I concur with the majority's resolution of the Tuckers' assignments of error raised in their appeal. I further concur in the dismissal of Baughman's appeal. I respectfully dissent, however, from the portion of the majority's opinion vacating a portion of the trial court's September 10, 2012 entry. It is axiomatic that this Court may not rule on issues arising out of the appeal while simultaneously dismissing the appeal. I would dismiss Baughman's appeal in toto, as this Court lacks jurisdiction to consider the merits.

**{¶34}** It has long been recognized as a fundamental principle that "appeal lies only on behalf of a party aggrieved. Unless an appellant can show that *his rights* have been invaded, no error is shown to have been committed by the court or body which entered the final order." *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.*, 140 Ohio St. 160, 161 (1942). In this case, Baughman won. Because the company is not an aggrieved party, the proper resolution is for this Court to dismiss Baughman's appeal. *See id.* at 163.

APPEARANCES:

DAVID W. HILKERT and ORVILLE L. REED, Attorneys at Law, for Appellants/Cross-Appellees.

LEAH HOHENBERGER, and JOHN MURPHY, Attorneys at Law, for Appellees/Cross-Appellant.

KIMBERLY K. WYSS, Attorney at Law, for Appellee.