**[Cite as *Johnson v. CBRE, Inc.*, 2023-Ohio-3518.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

DEANNA JOHNSON

    Appellant

    v.

CBRE, INC., et al.

    Appellees

C.A. No.    30393

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2020-02-0494

DECISION AND JOURNAL ENTRY

Dated: September 29, 2023

STEVENSON, Judge.

{¶1} Plaintiff-Appellant Deanna Johnson ("Johnson") appeals from the judgment of the Summit County Court of Common Pleas in favor of Defendants-Appellees CBRE, Inc. ("CBRE") and The Davey Tree Expert Company ("Davey"). For the reasons set forth below, we affirm.

I.

*Factual Background*

{¶2} This is a personal injury action arising from an incident that occurred on January 3, 2019, at the Twinsburg Family Health and Surgery Center ("Facility") wherein Johnson suffered an ankle fracture when she slipped and fell on ice in the parking lot.

{¶3} Cleveland Clinic Foundation ("CCF") is the owner of the Facility. Johnson is an employee of CCF and was transferred to the Facility when it opened in 2011. At that time, there was one helipad on the premises. A second helipad was constructed near the parking lot in 2016.

When construction of the second helipad was completed, CCF began experiencing problems with water runoff from the helipad area into the employee parking lot.

{¶4} In July 2013, CCF contracted with CBRE to perform facility management and real estate services such as maintenance and interior repairs to the Facility. Amongst CBRE's duties is the oversight and management of vendors providing services to CCF. In November 2013, CCF and Davey entered into an agreement for grounds maintenance services, which included Statements of Work for all CCF properties and the Facility in particular. This agreement was extended through November 30, 2019. Because Davey was a vendor to CCF, CBRE was responsible for overseeing Davey's work.

{¶5} In March 2017, Mike Burton ("Burton"), an account manager at Davey sent an email to Mario Cammarata ("Cammarata"), CCF's Administrative Coordinator for grounds notifying Cammarata of a constant light flow of water across the Facility's employee parking lot that created an icy spot when temperatures fell below freezing. Cammarata notified Robert Schlappel ("Schlappel"), CBRE's operations manager at the Facility, of the issue. While Schlappel believed that a leaking fire hydrant was causing the water problem, upon investigation it was determined the water was not coming from the hydrant, but instead, was runoff as a result of groundwater coming from somewhere near the second helipad. Schlappel made no recommendations to CCF to address the issue because he felt it was not a problem since it did not happen on a regular basis. CCF's only response was to inform Davey to monitor the area and apply salt when the conditions warranted it. CCF did not require anything further from CBRE.

{¶6} Other than the conversations and emails that took place in March 2017, neither Cammarata nor Schlappel recalled any further water problems occurring in that area. Anthony

Clum ("Clum"), a branch manager for Davey who was responsible for overseeing Davey's crews that worked at the Facility, also stated he was unaware of any complaints after that time, although acknowledging the continuing water runoff. He also acknowledged that it was his responsibility to monitor the area.

{¶7} Johnson worked three days per week and always parked in the same lot at the Facility. She estimated that 98% of the time that she worked at the Facility, she parked near the same location and took a similar path from her car to the doors closest to the emergency department. She used the same path to return to her car at the end of her shift. She never had any issues with lighting in the parking lot and found it sufficient to avoid any items on the ground. She denied having any issues or concerns with snow or ice prior to January 3, 2019.

{¶8} Johnson was aware of the water flow in the parking lot from her own observations while walking in and out of the Facility. She described it as wet pavement occurring two to three times per week, seemingly at random, regardless of the season. She further described it as sometimes active, and at other times just a wet mark. She also frequently noted large salt piles in the area which became the subject of jokes with her co-workers. She stated that she never avoided the area, even in winter, because it was always heavily salted.

{¶9} On January 3, 2019, Johnson left the Facility at approximately 7:45 pm and walked the usual route to her car. On that date, there was less than .1 inch of precipitation and no snow or ice cover remained by the end of the day. The high temperature that day was 33 degrees (F) with a low of 29 degrees (F). Johnson exited the Facility, descended the curb, took a few steps, then her left foot slipped out from beneath her. She fell on her right buttock and side and immediately felt pain in her right ankle. She used her mobile phone to call the emergency

department and within minutes, two of her co-workers arrived with a wheelchair and transported her into the emergency department.

{¶10} At the time of her fall, Johnson could not recall observing any ice on the ground, dark spots, light reflecting off the ice, or salt, but admitted she was not looking at the ground because it was always taken care of and she never worried about falling. She acknowledged she could have walked a different route to her car to avoid any hazards but did not do so because she never had to before.

{¶11} A medic employed by CCF summoned a security officer at the Facility, Kyle Bartko ("Bartko"). Upon his arrival, Bartko observed Johnson on the ground and reported seeing a patch of ice where she fell. He stated that he noticed the icy patch from 40 to 50 feet away, that there was light reflecting off the ice, that the rest of the parking lot appeared to be dry, and that the icy spot was easily discernable as soon as he exited the door to the parking lot. He then placed salt down on the icy area. Shortly thereafter, Davey's employee, Clum, arrived at the scene and noticed that the area where Johnson fell looked wet and that it was easy to spot.

{¶12} Johnson was diagnosed with a tri malleolar fracture and a broken fibula in her right ankle which required surgery. She filed a complaint against CBRE and Davey that set forth the following claims: 1) failure to repair a water leak which created an unnatural accumulation of ice; 2) failure to maintain and/or inspect the premises for an unnatural accumulation of ice; and 3) breach of contract with CCF by failing to repair and/or maintain the premises in a manner to avoid the unnatural accumulation of black ice.

{¶13} CCF filed an intervenor complaint which set forth a claim to recover past and future medical and indemnity benefits paid to Johnson in connection with Johnson's allowed workers'

compensation claims. CBRE and Davey filed motions for summary judgment. Johnson opposed the motions. With leave of court, both CBRE and Davey filed replies.

**{¶14}** The trial court granted CBRE and Davey's motions for summary judgment. Regarding the negligence claims, the trial court ruled that neither Davey nor CBRE owed Johnson a duty to protect her against the natural accumulation of ice and that her claims were also barred by the open and obvious doctrine. The trial court also ruled that Johnson failed to establish that a water leak existed, and as such, Davey and CBRE had no duty to repair a non-existent condition. As for the breach of contract claims, the trial court ruled that neither Davey nor CBRE breached any duty under their respective contracts with CCF. CCF's intervenor complaint was dismissed because CCF could only have recovered from Appellees if Johnson was successful.

**{¶15}** Johnson timely appealed on August 5, 2022, and raises one assignment of error for our review.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF CBRE AND DAVEY TREE.**

**{¶16}** In support of her sole assignment of error, Johnson argues that the trial court committed reversible error when it concluded there was no genuine issue of material fact as to the following: 1) that CBRE did not breach its contractual obligations nor negligently violate industry standards for the management, operations, and maintenance of the Facility; 2) that Davey did not breach its contractual obligations nor negligently violate industry standards for commercial snow and ice removal; 3) the open and obvious doctrine applies; and 4) Davey and CBRE owed Johnson no duty to protect her against a natural accumulation of ice. She requests that the trial court's order granting summary judgment in favor of Appellees be reversed.

{¶17} A review of a trial court's grant of summary judgment is considered de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We apply the same standard as the trial court, viewing the facts in the light most favorable to the non-moving party and resolving any doubt in the favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

{¶18} Under Civ.R. 56(C), summary judgment is appropriate when:

> (1)[no] genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶19} Summary judgment consists of a burden-shifting framework. The movant bears the initial burden of demonstrating the absence of genuine issues of material fact concerning the essential elements of the nonmoving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the moving party satisfies this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293. "[T]he non-moving party may not rest upon the mere allegations and denials of the party's pleadings," but must point to or submit some evidentiary material of the type described in Civ.R. 56(E) that establishes the existence of a genuine issue for trial. *Id.* "[T]o withstand summary judgment, an opposing party has the reciprocal burden of responding and setting forth specific facts demonstrating the existence of a "genuine triable issue." *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 449 (1996).

{¶20} When making its decision, the trial court must view the evidence "most strongly in favor" of the non-moving party, Civ.R. 56(C), and resolve all doubts in favor of the non-moving party. *Murphy*, 65 Ohio St.3d at 358-359. Therefore, summary judgment should only be granted

when it appears from the evidentiary material that reasonable minds could only reach a conclusion adverse to the party opposing the motion. *Id.* "In ruling on a motion for summary judgment, a trial court may not weigh the evidence and determine issues of fact." *Horner v. Elyria*, 9th Dist. Lorain No. 13CA010420, 2015-Ohio-47, ¶ 10. A court also "may not resolve questions of credibility on summary judgment." *Id.* citing *Turner v. Turner*, 67 Ohio St.3d 337, 341-342 (1993).

{¶21} The parties have not contested the trial court's conclusion that Johnson was a business invitee at the time she was injured. "An owner or occupier of premises owes business invitees a duty of ordinary care to maintain the premises in a reasonably safe condition, so that its invitees are not unnecessarily and unreasonably exposed to danger." *Clark v. BP Oil Co.,* 9th Dist. Summit No. 21398, 2003-Ohio-3917, ¶ 9, citing *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 203-204 (1985).

{¶22} To prevail on a claim of negligence, a plaintiff must establish the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach of duty. *Prexta v. BW-D Akron, Inc.*, 9th Dist. Summit No. 23314, 2006-Ohio-6969, ¶ 9.

### *Ohio's No-Duty Winter Rule*

{¶23} Ohio's so-called "no-duty winter rule" provides that an occupier has no duty to remove natural accumulations of ice and snow or to warn invitees of the dangers associated with such natural accumulations. *Brinkman v. Ross*, 68 Ohio St.3d 82, 83 (1993). Where snow and ice accumulate from natural meteorological occurrences, an owner or occupier has a right to assume an invitee will discover the dangers and take action to protect himself. *Id.* at 84; *LaCourse v. Fleitz*, 28 Ohio St.3d 209 (1986). "[A]n owner of property is not liable for injuries to business invitees who slip and fall on natural accumulations of ice and snow." *LaCourse* at 210. "The law presumes that reasonable people will naturally exercise caution when confronted with obvious dangers."

*Carter v. Lorain Bd. of Edn.*, 9th Dist. Lorain No. 4153, 1987 WL 10930, *1 (May 6, 1987). There are exceptions to this general rule.

{¶24} This Court has previously established the law governing this question:

> It is axiomatic that in Ohio a property owner owes no duty to a business invitee to remove natural accumulations of snow and ice from sidewalks, steps and parking lots. There is no such duty because 'the dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of premises may reasonably expect that a business invitee on his premises will discover those dangers and protect himself against them.' On the other hand, a property owner may be liable for the unnatural accumulations of ice and snow where there is evidence of an intervening act by that owner which perpetuates or aggravates the pre-existing, hazardous presence of ice and snow.

> * * *

> [A] property owner will be held liable for ice hazards caused by a natural accumulation of ice if that owner has superior knowledge of the injury [-] causing hidden danger because an invitee may not reasonably be expected to protect himself or herself from such harm.

> * * *

> In cases involving an unnatural accumulation of ice and snow, a plaintiff must show that the defendant created or aggravated the hazard, that the defendant knew or should have known of the hazard, and that the hazardous condition was substantially more dangerous than it would have been in the natural state. Melting snow that refreezes into ice is natural, not an unnatural accumulation of ice.

(Internal citations omitted.) *Klein v. Ryan*'s *Family Steak House*, 9th Dist. Summit No. 20683, 2002-Ohio-2323, ¶ 10, 14, 18.

{¶25} The parties do not dispute that CBRE and Davey were acting as independent contractors for CCF on the day in question.

> An independent contractor owes a general duty of care towards a business invitee; that is, he must exercise that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances. *In the context of snow and ice removal* * * * the [independent contractor] breaches his duty of care if his actions create an *unnatural* accumulation that substantially increases the risk of injury normally associated with winter accumulations of ice and snow.

(Emphasis added.) *Bakies v. RSM Maintenance, Inc.*, 3d Dist. Allen No. 1-19-03, 2019-Ohio-3323, ¶ 43, quoting *Jackson v. J-F Ents., Inc.*, 6th Dist. Lucas No. L-10-1285, 2011-Ohio-1543, ¶ 14, citing *Zamano v. Hammerschmidt, Inc.*, 6th Dist. Huron No. H-02-031, 2003-Ohio-1618, ¶ 21 and *Dunbar v. Denny's Restaurant*, 8th Dist. Cuyahoga No. 86385, 2006-Ohio-1248, ¶ 13.

**{¶26}** An unnatural accumulation of ice is one that is man-made or man-caused. *Klein* at ¶ 10; *Porter v. Miller*, 13 Ohio App.3d 93, 95 (6th Dist.1983). "An unnatural accumulation refers to causes and factors other than the winter's low temperatures, strong winds, drifting snow, and natural thaw and freeze cycles. Unnatural accumulations are caused by a person doing something that would cause ice and snow to accumulate in an unexpected place or way." *Lawrence v. Jiffy Print, Inc.*, 11th Dist. Trumbull No. 2004-T-0065, 2005-Ohio-4043, ¶ 14.

**{¶27}** Here, the trial court concluded that the ice upon which Johnson fell was the result of a natural accumulation; that Johnson failed to demonstrate any act of either Davey or CBRE that perpetuated or aggravated the existence of ice in the area; and that Johnson failed to demonstrate that Davey or CBRE had superior knowledge of a condition more dangerous than Johnson could have anticipated.

**{¶28}** Johnson alleges that there is a genuine issue of fact that the ice formed naturally. She argues that a trier of fact could reasonably conclude that because the helipad was a man-made elevated concrete surface, any natural water in the form of snow or ice that trickled from the helipad area to the lower parking lot became an unnatural accumulation that substantially increased her risk of injury when it froze and turned into black ice. We disagree.

**{¶29}** First, Johnson's position is not supported by Ohio law. It is well-settled that natural rainwater, groundwater, or snow and ice does not become an unnatural accumulation when it travels from a man-made elevated surface to a lower surface. *Mayes v. Boymel*, 12th Dist. Butler

No. CA2002-03-051, 2002-Ohio-4993, ¶ 13 (man-made roof which lacked a gutter and caused snow and ice to run into the parking lot where it turned to ice not unnatural); *Bach v. Gatsby Saloon, Inc.,* 10th Dist. Franklin No. 94APE12-1781, 1995 WL 326202, *3 (June 1, 1995) (lack of gutter on a roof and awning partially covering the stairs that allowed rain and snow to run onto deck where it turned to ice not unnatural); *Blair v. M & L Supply Co.*, 9th Dist. Summit No. 7473, 1974 WL 183967, *2 (Oct. 9, 1974) (no actionable negligence claim where individual fell during winter with no snow on the ground and a slight drizzle in the air on a patch of ice that accumulated over several days as a result of water run-off near a sewer drain, even where the owner of the property had notice of the accumulation and did not address it); *Lawrence*, 11th Dist. Trumbull No. 2004-T-0065, 2005-Ohio-4043, at ¶ 14-15 (absent evidence of building code violation or any drainage system not working properly, accumulation of ice from water dripping off roof with no gutter due to melting of snow was natural).

{¶30} This and other Ohio appellate courts "have repeatedly held that an accumulation of ice is not unnatural simply because water collected in a depression in a sidewalk or driveway and subsequently froze due to cold weather." *Lawrence* at ¶ 31; *see also Juredine v. Heather Hill, Inc.*, 11th Dist. Trumbull No. 92-G-1704, 1993 WL 130101, *1 (Mar. 26, 1993); *Goodwill Industries of Akron v. Sutcliffe*, 9th Dist. Summit No. 19972, 2000 WL 1288057, *2 (Sept. 13, 2000). Johnson has not distinguished her situation here in any way.

{¶31} Johnson also failed to present any record evidence that the water runoff was the result of anything other than the trickling downward of the groundwater around the area of the helipad, such as the negligent construction of the helipad or a leaking or malfunctioning component that increased a pre-existing hazardous presence of ice. Other than her assertion that the helipad

is an elevated surface, Johnson offered no evidence that a defective condition of the helipad caused the water runoff that later turned to ice.

{¶32} Moreover, for the reasons set forth below, even if we were to agree with Johnson that the water runoff from the helipad were to somehow transform the natural rainwater and snow into an unnatural accumulation, she has failed to present any evidence that either Davey or CBRE created or aggravated the unnatural accumulation of ice; that they knew or should have known of the accumulation; that the icy condition was substantially more dangerous than it would have been in the natural state; or that their actions substantially increased the risk of injury normally associated with winter accumulations of ice and snow. *See Klein*, 9th Dist. Summit No. 20683, 2002-Ohio-2323, at ¶ 18; *Bakies*, 3d Dist. Allen No. 1-19-03, 2019-Ohio-3323, at ¶ 43.

{¶33} First, CCF installed the helipad. Thus, neither Davey nor CBRE could be the creators of any hazard emanating from it. Secondly, by itself, the formation of black ice on pavement is not a condition substantially more dangerous than a business invitee should anticipate. *Miller v. Tractor Supply Co*., 6th Dist. Huron No. H-11-0001, 2011-Ohio-5906, ¶ 14; *Burton v. CFA Med. Bldg. and Garage*, 8th Dist. Cuyahoga No. 74335, 1999 WL 401403, *2 (June 17, 1999).

{¶34} In addition, Johnson herself was aware of the water runoff from the helipad and the fact that water was often present in the parking lot, regardless of the weather or other conditions. Johnson described the weather on January 3, 2019, as cold and rainy. Johnson testified that she did not observe ice on the pavement where she fell, only wet pavement. It was January in Ohio with cold temperatures. A reasonable person living in Ohio is charged with awareness that in the wintertime a wet and slippery spot could quickly become an icy and potentially dangerous condition. *Mayes*, 12th Dist. Butler No. CA2002-03-051, 2002-Ohio-4993, at ¶ 14 (snow and ice

are a part of wintertime life in Ohio and hazardous winter weather conditions and their attendant dangers are to be expected).

{¶35} Furthermore, Johnson's knowledge that the area was often salted means that it was reasonable for her to expect that ice may be present in the area where water regularly appeared on a cold winter night. This Court has previously established that "[t]he spreading of de-icing materials on certain portions of a parking lot will, as a matter of law, neither create a hidden danger nor impute superior knowledge thereof to a property owner." *Goodwill Industries of Akron, Inc.,* 9th Dist. Summit No. 19972, 2000 WL 1288057, at *4.

{¶36} Moreover, Johnson has not pointed to any evidence demonstrating that either Davey or CBRE had knowledge of the ice that formed in the parking lot prior to the time of her exit from the Facility at 7:30 p.m. on the day in question. There is no dispute of fact that when CBRE's staff left the Facility at 5:00 p.m., no ice had formed. After that time, CCF was responsible for contacting Davey if snow or ice formed.

{¶37} Based on the foregoing, the trial court did not err in concluding that there was no genuine issue of fact that the Ohio no-duty winter rule applies and bars Johnson's claim against CBRE and Davey.

### *The Open and Obvious Doctrine Does Not Apply to Independent Contractors*

{¶38} The trial court concluded that no genuine issue of fact exists that Johnson's claims are barred by the open and obvious doctrine. "The 'open and obvious' doctrine states that an owner or occupier of property owes no duty to warn invitees entering the property of open and obvious dangers on the property." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992), citing *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), paragraph one of the syllabus. "[T]he open and obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims."

*Armstrong v. Best Buy Co.,* 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 5. The open and obvious doctrine is based on the principle that a landowner "has the right and power to admit or exclude persons as invitees, licensees, or trespassers." *Simmers* at 645.

{¶39} In accord with the Ohio Supreme Court's pronouncement in *Simmers*, this Court established that "an independent contractor * * * may not avail itself of the open and obvious doctrine." *Hackett v. TJ Maxx*, 9th Dist. Summit No. 24978, 2010-Ohio-5824, ¶ 16, citing *Simmers* at syllabus. In *Simmers,* the Ohio Supreme Court declined to extend the open and obvious doctrine to independent contractors, i.e., "persons who conduct activity with the consent of the landowner but who themselves have no property interest in the premises." *Simmers* at 645. "Instead, we apply the traditional law of negligence[,]" and "refer to the elements of negligence * * * a duty to the plaintiff, a breach by the defendant, and an injury sustained by the plaintiff caused by the breach." *Hackett* at ¶ 16; *see also Tucker v. Dennis Baughman Co.*, 9th Dist. Summit Nos. 26620, 26635, 2014-Ohio-2040, ¶ 26 (defendant failed to establish that it had an ownership interest in the subject property and thus was not entitled to the benefit of the open and obvious doctrine).

{¶40} Having determined that the open and obvious doctrine does not apply here, we look to the law of negligence. Since we have already concluded that Davey and CBRE did not breach a duty owed to Johnson, our analysis ends here. While the trial court erred in applying the open and obvious doctrine to this case, that error is harmless because it did not affect Johnson's substantial rights. Civ.R. 61.

### *Breach Of Contractual Duty*

{¶41} Courts have recognized that although owners and occupiers of land ordinarily owe no duty to business invitees to warn them of the dangers associated with natural accumulations of ice and snow or to remove natural accumulations of ice and snow from their premises, that duty

can be created by express contract. *Bakies,* 3d Dist. Allen No. 1-19-03, 2019-Ohio-3323, at ¶ 30, citing *Chatelain v. Portage View Condominiums*, 9th Dist. Summit No. 20995, 2002-Ohio-6764, ¶ 8.

{¶42} "To prevail on a claim of breach of contract, [a party] must prove 'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.'" (Citations omitted.) *Kunkle v. Akron Mgt. Corp*., 9th Dist. Summit No. 22511, 2005-Ohio-5185, ¶ 16. These elements must be proven by a preponderance of the evidence. *Cooper & Pachell v. Haslage*, 142 Ohio App.3d 704, 707 (9th Dist.2001).

{¶43} When construing a contract, a court's principal objective is to determine and give effect to the parties' intent. *Hamilton Ins. Servs. v. Nationwide Ins. Co.,* 86 Ohio St.3d 270, 273 (1999). It is well-settled that contractual responsibilities may only be ascertained from the plain language of the contract itself, and when the terms of the contract are clear, the court shall not look beyond the plain language to determine the parties' intent. *Alexander v. Buckeye Pipeline Co.,* 53 Ohio St.2d 241, 245-246 (1978).

### *Davey Tree*

{¶44} The trial court concluded that Davey did not have a contractual duty to Johnson to remove the ice that accumulated in the parking lot where she fell or to remedy the water runoff from the helipad because under the unambiguous terms of the contract between CCF and Davey, Johnson was not an intended third-party beneficiary, and Davey's responsibility to remove ice at the Facility was limited to ice resulting from a snowfall event.

{¶45} Johnson argues that there are disputed issues of material fact as to whether Davey's duty to remove ice at the Facility was limited to a snowfall event. She also argues that the trial

court erred in concluding that Johnson, as an employee of CCF, is not a beneficiary of the contract between CCF and Davey.

*Johnson Is Not A Third-Party Beneficiary*

**{¶46}** The contract executed by Davey and CCF contains the following provision:

This Agreement ("Agreement"), effective as of November 1st, 2013 ("Effective Date"), is between the Cleveland Clinic Foundation d.b.a. Cleveland Clinic ("CC") * * * and The Davey Tree Company ("Company") * * *.

**{¶47}** The contract also contains the following provision:

No Third Party Beneficiaries. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective permitted successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as provided in this Agreement.

**{¶48}** The contract's language clearly and unambiguously states that the parties to the contract are CCF and Davey. The contract also contains a clear and unambiguous provision stating that there are no third-party beneficiaries. Thus, under the plain and unambiguous terms of the contract, Johnson is not a third-party beneficiary of the contract between CCF and Davey, and the duties imposed by the contract were not owed to her. There is no need to look beyond the language of the contract to determine the parties' intentions because the express terms are clear and unambiguous.

**{¶49}** Accordingly, based on the foregoing, the trial court did not err in concluding that the plain and unambiguous language of the contract between CCF and Davey clearly states Johnson is not a third-party beneficiary. Having decided that Johnson is not a beneficiary of the contract, we do not need to reach the question of whether Davey's duty to remove ice at the Facility was limited to ice resulting from a snowfall event. It is a moot point because Davey owed Johnson no duty under the contract.

*CBRE*

{¶50}   The trial court concluded that because Davey did not breach its contract with CCF, Johnson failed to establish that CBRE breached its contract with CCF to adequately supervise Davey. It also concluded that CBRE properly investigated the source of the water runoff and made the necessary recommendations to CCF.

{¶51}   Johnson argues on appeal that summary judgment was improper because there was a genuine issue of fact as to whether CBRE breached its contract with CCF by failing to adequately supervise Davey, and whether CBRE negligently failed to properly manage and rectify the constant flow of water across the employee parking lot after the 2017 incident, thus directly causing Johnson's injury.  We disagree.

{¶52}   The relevant provision of the contract between CBRE and CCF states as follows regarding CBRE's responsibilities:

> Service Provider is expected to analyze/trend failures and incidents, determine root cause, and implement process improvements as appropriate.

> Service Provider will participate in tracking site related safety incidents * * * but that service provider is responsible for all aspects of incident management, investigation.

> * * *

> When unsafe conditions or activities are observed or reported by a third party, confront, rectify and/or report.

> Conduct effective Service Provider safety meetings and enforce the requirements on subcontractors on a regular basis.  Conduct root cause analysis of safety incidents and implement or recommend to CCF effective measures to prevent recurrence.

{¶53}   Based on the foregoing provisions of the contract, CBRE had a duty to investigate any incidents, determine the cause, and identify, confront, rectify, and/or report unsafe conditions to CCF.

**{¶54}** On March 17, 2017, CBRE reported to CCF that it had investigated the issue and determined where the water in the parking lot was coming from. CCF then informed Davey via email that CBRE had investigated the issue, had made the determination that ground water was rolling off the helipad area into the parking lot and that Davey was going to have to deal with the water traveling from the helipad into the parking lot. Thus, CBRE performed its contractual duties of investigating the concern, determining the cause of the water in the parking lot, and reporting its findings to CCF. CCF then chose how to handle the situation by instructing Davey that it needed to closely monitor this area where ground water, snow melt, and rainwater could travel from the elevated helipad anytime the temperature was at or near freezing. CCF's grounds administrator, Cammarata, acknowledged he was satisfied with Davey's handling of the issue and that he did not expect anything additional from CBRE. Johnson failed to meet her burden of setting forth disputed facts that CBRE breached its contract with CCF by not investigating the incident, determining the cause, and/or reporting to CCF.

**{¶55}** Johnson argues that CBRE breached its contract with CCF to supervise Davey's contractual obligation to provide snow and ice removal. The parties do not dispute that CBRE was obligated to manage all third parties' contractual obligations to CCF. The trial court found there was no question of material fact that Davey did not violate its obligations under the contract with CCF, and therefore, CBRE could not have breached its duty to supervise Davey. Even though we have determined that Davey did not breach its contract with CCF because it owed Johnson no duty, we still must review the terms of Davey's contract with CCF to determine if CBRE breached its duty to supervise Davey's obligations owed to CCF.

**{¶56}** The contract between CCF and Davey Tree states:

1. **<u>Snow removal is required at Zero Tolerance with a maximum  30-60-minute response time for all locations.</u>** Heavy snowfalls and icy conditions will require additional and continuous service by vendor.

c. All driveways and parking lots are to be kept clear of snow at all times. Melted snow tends to "waterfall" down the sloped patient lots, causing icy conditions, which may require additional attention and salting.

**{¶57}**  The trial court correctly determined there were no disputed facts that no snowfall event triggered Davey's duty to remove ice and snow from the parking lot on the day of Johnson's fall.  Johnson produced no evidence that it snowed that day. Because Davey's duty was not triggered, CBRE's duty to supervise Davey was also not triggered.

**{¶58}**  The trial court did not reach the issue of whether CBRE and Davey negligently violated industry standards. Furthermore, based on our conclusion that neither party owed a contractual duty to Johnson, the issue is moot.  Therefore, we will not address that portion of Johnson's argument.

III.

**{¶59}**  Accordingly, based on the foregoing, this Court concludes that the trial court did not err in granting summary judgment in favor of Appellees.  The trial court properly concluded that  no genuine issue of material fact exists regarding Johnson's negligence and breach of contract claims.  Johnson's single assignment of error is overruled.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, J.
CONCURS.

CARR, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

MICHAEL S. SCHROEDER, Attorney at Law, for Appellant.

JOSEPH FIORELLO and THOMAS MANNION, Attorneys at Law, for Appellee.

JOSEPH SANTORO, JOSEPH MUNROE, II, and TAYLOR M. IACOBACCI, Attorneys at Law, for Appellee.

R. MARK GOTTFRIED, Attorney at Law, for Intervenor